Myers, J.
 

 Relator, Clarence D. Kester, filed this action for a writ of mandamus to compel defendants as members of the Board of Elections of Darke county to accept and file relator’s declaration of candidacy and petition as a candidate for nomination to the office of coroner on the Democratic ticket/ and to cause relator’s name to be printed on the official Democratic
 
 *524
 
 ballot to be voted at tbe primary election on tbe 14th day of May, 1940. The board of elections refused to accept and file relator’s declaration of candidacy and the petition attached thereto for the alleged reason that relator was not a licensed physician as required by Section 2856-3, General Code.
 

 The sole question, therefore, is whether the relator is a licensed physician within the meaning of Section 2856-3, General Code, which reads in part as follows: “No person shall be eligible to the office of coroner in any county except a licensed physician of good standing in his profession or a person who shall have previously served as coroner prior to his election.”
 

 Respondents in their answer “admit that the relator is an osteopathic physician and surgeon, licensed by the State Medical Board of Ohio to practice osteopathy and surgery in the state of Ohio; that relator pursued the courses of study and submitted to the examinations, as alleged in his petition, and that he has deposited his license issued by the State Medical Board to practice osteopathy and surgery with the Probate Judge of Darke county, as alleged in his petition.” To the answer relator filed a demurrer. The issue is thereby further narrowed down to the following question: Is an osteopathic physician and surgeon, licensed by the State Medical Board of Ohio to practice osteopathy and surgery in the state of Ohio, a “licensed physician” within the purview of Section 2856-3, General Code?
 

 There are scholarly discussions in the briefs about “four great schools of medicine.” There are learned disquisitions on
 
 materia medica,
 
 therapeutics and other kindred subjects, all of which might be material, if we had the duty to distinguish between various schools of medicine. The General Assembly made no such distinctions in the law. The statute merely states a “licensed physician,” or to phrase it in another way a “physician” who is “licensed.” In the enact
 
 *525
 
 ment of this statute the Legislature did not have in mind the particular qualifications of any one kind of licensed physicians. Rather the Legislature did have in mind the duties of a coroner, an office to which until then any layman could be elected. And curiously enough a person, a layman, “who shall have previously served as coroner prior to his election,” may, under the statute, still be a candidate and elected to the office.
 

 As outlined in the statutes, most of the duties of the coroner have to do not with the living but with the dead and the cause of their demise. The coroner is also the custodian of the county morgue. He has other ministerial duties which any layman could perform. Any doubt respecting the scope of a statute restricting the right of the people to choose their own officials must be resolved in favor of the electorate. Until the General Assembly, by appropriate legislation, indicates more definitely what it intended by the term, we are obliged to hold that relator is a “licensed physician” within the purview of the statute.
 
 In Matter of Bandel
 
 v.
 
 Dept. of Health,
 
 193 N. Y., 133, 85 N. E., 1067;
 
 People, ex rel. Gage,
 
 v.
 
 Siman,
 
 278 Ill., 256, 115 N. E., 817;
 
 State
 
 v.
 
 Schmidt,
 
 138 Wis., 53, 119 N. W., 647;
 
 State, ex rel. Walker,
 
 v.
 
 Dean,
 
 155 Wash., 383, 284 P., 756;
 
 Towers
 
 v.
 
 Glider & Levin,
 
 101 Conn., 169, 125 A., 366, 40 A. L. R., 1263.
 

 The demurrer to the answer will be sustained and the writ of mandamus allowed.
 

 Writ allowed.
 

 Weygandt, C. J., Day, Zimmerman, Williams, Matthias and Hart, JJ., concur.